UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GOAT RANCHERS OF OREGON, an
unincorporated association doing business in
Oregon; CENTER FOR BIOLOGICAL
DIVERSITY, an Arizona nonprofit
corporation; BIG WILDLIFE, an Oregon
nonprofit corporation; KLAMATH
SISKIYOU WILDLANDS CENTER, an
Oregon nonprofit corporation; UMPQUA
WATERSHEDS, an Oregon nonprofit
corporation; and MOUNTAIN LION
FOUNDATION, a California nonprofit
corporation,

       Plaintiffs,

  v.

DAVID E. WILLIAMS, in his capacity as
Oregon Wildlife Services State Director,
Wildlife Services/USDA Animal and Plant
Health Inspection Service (APHIS); and
USDA ANIMAL AND PLANT HEALTH
INSPECTION SERVICE (APHIS),

       Defendants.

ORDER

Civil No. 08-97-ST

HAGGERTY, District Judge:

    Magistrate Judge Stewart referred to this court a Findings and Recommendation [42] in this matter. The Magistrate Judge recommends denying plaintiff's Motion for Summary

1  - ORDER

Judgment [12] and granting defendants' Cross Motion for Summary Judgment [25] on the ground that plaintiffs lack standing.  Plaintiffs filed timely objections to the Findings and Recommendation and defendants filed a timely response.  For the following reasons, this court adopts the Findings and Recommendation.

## STANDARDS

When a party objects to any portion of a Findings and Recommendation, the district court must conduct a *de novo* review.  28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## BACKGROUND

The Findings and Recommendation provides a factual summary outlining the history of this matter, and the facts will not be fully repeated here.  Plaintiffs are six environmental organizations and an association of ranchers.  Plaintiffs allege that defendants' decision to kill cougars in the State of Oregon pursuant to the Oregon Department of Fish and Wildlife's (ODFW) Cougar Management Plan (CMP) violates the National Environmental Policy Act (NEPA).

Defendant Wildlife Services of the United States Department of Agriculture Animal and Plant Health Inspection Services (Wildlife Services) is a unit within the Department of Agriculture tasked with managing problems caused by wildlife.  7 C.F.R. § 371.6(a).  In accordance with this responsibility, Wildlife Services is authorized to assist state agencies in controlling "wildlife damage."  7 C.F.R. § 371.6(b)(3).

In April 2006, ODFW finalized the CMP. Findings and Recommendation at 4. One objective of the CMP is to cull Oregon's cougar population in an effort to reduce alleged cougar-human conflict. *Id.* at 4-5. In accordance with the CMP, ODFW requested Wildlife Services' assistance in killing cougars. *Id*. at 6.

Wildlife Services prepared an Environmental Assessment (EA) of the proposed action and made a Finding of No Significant Impact (FONSI). *Id*. at 7-8. The FONSI was based upon the fact that ODFW had "made it clear that cougar removal in each of the selected target areas addressed in this EA are not dependent on Wildlife Services [sic] participation." Administrative Record at 1414.

Subsequent to issuing the FONSI, Wildlife Services entered into an agreement with ODFW to kill cougars in Oregon whereby ODFW determines the number of cougars to be killed, selects the locations for cougar removal, makes ongoing management decisions in the implementation of the CMP, and pays for 100 percent of Wildlife Service's operational costs. Findings and Recommendations at 7. Since August 2008, Wildlife Services has been killing cougars at the direction of ODFW, and has killed approximately half of the cougars culled under the CMP. *Id*. at 8, 15. In 2007, the Oregon legislature passed a law permitting ODFW to use volunteer agents with dogs to pursue and kill cougars. Or. Rev. Stat. 498.164(3).

In January 2008, plaintiffs filed suit challenging the adequacy of the EA. Plaintiffs request injunctive relief enjoining defendants from further participation in the CMP pending compliance with NEPA.

Defendants and ODFW contend that ODFW will cull Oregon's cougar population pursuant to the CMP regardless of whether Wildlife Services participates. Plaintiffs contend that

3   - ORDER

Wildlife Services is essential to carrying out the CMP and that fewer cougars would be killed absent their involvement.

The Findings and Recommendation found that plaintiffs' lack standing because their claims are not redressable by this court.  Accordingly, the Findings and Recommendation recommended granting defendants' Motion for Summary Judgment.

## DISCUSSION

To satisfy the standing requirements of Article III of the United States Constitution, a plaintiff must show that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000).

A complete discussion of the standing requirements in a NEPA case can be found in the Findings and Recommendation.  Findings and Recommendation at 9-13.  This court has reviewed the Findings and Recommendation and the record and finds that at least one, if not more, of the plaintiffs have demonstrated that they have suffered an injury in fact.

Plaintiffs contend that the Findings and Recommendation applied the wrong test for the causation and redressability prongs of standing in the NEPA context.  Citing *Defenders of Wildlife v. EPA*, plaintiffs assert that they "must show only that they have a procedural right that, if exercised, *could* protect their concrete interests."  420 F.3d 946, 957 (9th Cir. 2005) *reversed on other grounds in National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).  As discussed in the Findings and Recommendation, the causation and redressability requirements of standing are relaxed in the NEPA context.  Findings and Recommendation at 13.

In NEPA cases, the causation and redressability requirements of standing are relaxed because NEPA is a procedural statute.  Generally, a plaintiff need only show that the defendant agency did not follow NEPA's procedures and that it is possible the agency will change their course of action after undertaking NEPA's procedures.  *Defenders of Wildlife*, 420 F.3d at 957.  However, these relaxed standing requirements presume that the defendant agency has the authority and ability to redress the plaintiff's ultimate injury.  "The redressability requirement is not toothless in procedural injury cases."  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008).  There must still be some possibility that granting the requested relief will have an effect on the ultimate injury alleged.  *Id*.

In this case, Magistrate Judge Stewart applied the correct standard and found that plaintiffs claims are not redressable.  There is no federal control over the CMP and there is no federal funding of the CMP.  To establish causation and redressability, plaintiffs argue that ODFW will be unable to effectively carry out the CMP without the aid and expertise of Wildlife Services.  However, the record demonstrates that ODFW is intent on carrying out the CMP with or without Wildlife Services.  Thus far, ODFW has killed approximately half the cougars killed under the CMP, and the state of Oregon has passed legislation enabling ODFW to deploy volunteer agents with dogs.  Were this court to enjoin Wildlife Services from participation in the CMP, ODFW could simply hire other cougar hunters with the funds they would no longer be expending on Wildlife Services or they could turn to volunteer agents.  Under these particular facts, where ODFW has already killed several cougars without Wildlife Services, has shown its intent to kill cougars with or without Wildlife Services, and the state of Oregon has passed legislation enabling such hunting, this court must conclude that plaintiffs' claims are not redressable.  As explained in the Findings and Recommendation, "[i]f this court refuses to grant

5   - ORDER

relief, then Wildlife Services and its agents will kill cougars at the direction of ODFW in accordance with the CMP[, and if] this court grants relief, then ODFW and its agents will kill cougars in accordance with the CMP."  Findings and Recommendation at 15.

Plaintiffs cite *Southwest Williamson County Community Association, Inc. v. Slater* to argue in the alternative that this is a federalized state action that is subject to the strictures of NEPA.  243 F.3d 270 (6th Cir. 2001).  However, the Findings and Recommendation concluded that plaintiffs lack standing to enforce NEPA, not that the challenged action is outside the scope of NEPA.  The reasoning set forth in *Southwest Williamson* does not change this result even if its reasoning were applicable to the facts at issue in this case.

The Findings and Recommendation is well-reasoned and without error.  This court adopts the Findings and Recommendation in its entirety.

## CONCLUSION

For the foregoing reasons, this court adopts the Findings and Recommendation [42]. Plaintiffs' Motion for Summary Judgment [12] is denied.  Defendants' Cross Motion for Summary Judgment [25] is granted and this case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this  30   day of March, 2009.

                                           /s/ Ancer L. Haggerty
                                              Ancer L. Haggerty
                                       United States District Judge